FRANK WARREN *et al. vs.* THE LOWER SALT CREEK DRAIN-
AGE DISTRICT, Appellee.—(WILSON R. BEAVER *et al.*
Appellants.)

*Opinion filed February 17, 1925—Rehearing denied April 11, 1925.*

1. STATUTES—*meaning of word "owner" must be determined
from its use.* The meaning of the word "owner" must be gathered
from the connection in which it is used and from the subject mat-
ter to which it is applied, and when used in a statute the obvious
nature and purpose of the statute may indicate its meaning.

2. WORDS AND PHRASES—*general meaning of word "owner" as
applied to real estate.* Where applied to real estate, without any
qualifying words, the word "owner," in common as well as legal
parlance, means an owner in fee simple, but the meaning may vary
according to context and subject matter.

3. DRAINAGE—*signature of life tenant, alone, cannot represent
acreage of land in drainage district.* Ordinarily one having a life
estate may be counted as a land owner in determining whether a
majority of land owners have signed a petition, but in determining
whether a majority of land owners "owning more than one-half
in area of lands in the district" have signed a petition to abolish
a drainage district under section 44 of the Levee act, the signature
of a life tenant, alone, cannot represent any acreage of the land
in which he holds a life estate, and such land cannot be counted
as represented in the petition unless the vested remaindermen or
reversioners also sign.

4. SAME—*remainderman has right to be represented in petition
where improvement affects his interest.* As an assessment for the
betterment of lands is not a tax but an incumbrance which falls
proportionately on a life tenant and the remainderman, the latter
is entitled to be represented on a petition in regard to an im-
provement, and he has a right to say whether he is willing to have
the improvement made and the consequent costs made a lien on
his interest in the property.

STONE, J., dissenting.

APPEAL from the County Court of Logan county; the
Hon. LAWRENCE B. STRINGER, Judge, presiding.

ANDERSON & MANGAS, for appellants.

EVAN WORTH, HAROLD TRAPP, and LYMAN LACEY, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

In June, 1921, Lower Salt Creek Drainage District, in the county of Logan, was duly organized under the provisions of the Levee act. In June, 1923, a petition was filed in the office of the clerk of the county court praying that the proposed work be abandoned and the district dissolved in accordance with the provisions of section 44 of said act. After a hearing on the sufficiency of the petition the county court entered an order dismissing it on the ground that the petitioners were not the owners of a majority of the lands within the drainage district. This appeal is prosecuted to review that order.

About 1600 acres of the 11,000 acres within the district are in the possession of life tenants. The remainders following these life estates are contingent and there is no specific conveyance of the fee. The principal question presented for decision is whether such a life tenant is the owner of the entire acreage within the meaning of the words "land owner," as used in the Levee act, so that, for the purpose of determining whether more than one-half of the lands in the district are represented, his signature to a petition represents the acreage in which he holds a life estate.

This proceeding is brought under the latter part of section 44 of the Levee act as it read prior to the amendment of 1923. It then provided: "And at any time before the contract for the construction of the proposed works shall have been made, upon presentation to the county court of a petition signed by a majority in number of all the land owners of such district, and owning more than one-half in area of lands in the district to which the petitioners belong, praying that the whole system of proposed works may be

abandoned and the district abolished, the court shall enter upon its record an order granting the prayer of such petition," etc.

The word "owner" is *nomen generalissimum*, and its meaning is to be gathered from the connection in which it is used and from the subject matter to which it is applied, and when used in a statute the obvious nature and purpose of the statute may indicate its meaning. (*Coombs* v. *People*, 198 Ill. 586; *Guild* v. *Prentis*, 83 Vt. 212, 74 Atl. 1115; *Merrill Railway and Lighting Co.* v. *City of Merrill*, 119 Wis. 249, 96 N. W. 686.) While the meaning may vary according to context and subject matter, when applied to real estate without any qualifying words the word "owner," in common as well as legal parlance, means an owner in fee simple. (*Bowen* v. *John*, 201 Ill. 292; *Jarrot* v. *Vaughn*, 2 Gilm. 132; *Illinois Mutual Fire Ins. Co.* v. *Marseilles Manf. Co.* 1 id. 236; *Johnson* v. *Crookshanks*, 21 Ore. 339, 28 Pac. 78.) The word "owner" as used in the Local Improvement act has been held to mean an owner in fee simple. (*Merritt* v. *City of Kewanee*, 175 Ill. 537.) One having a life estate in lands is an owner of land and may be counted as one in determining whether a majority in number of the land owners have signed the petition. (*Cosby* v. *Barnes*, 251 Ill. 460.) But manifestly a life tenant is not the owner of all the land in which he owns a life estate. This being true, the signature of the life tenant does not by itself represent the land in which he holds the life estate, (*Mayor of City of Baltimore* v. *Boyd*, 64 Md. 10, 20 Atl. 1028; *Colquitt* v. *Stevens*, 111 Ark. 314, 163 S. W. 1141;) but where the life tenant and the person or persons in whom the fee is vested as remaindermen or reversioners sign the petition the lands are represented, and the full acreage may be counted in determining whether more than one-half in area of the lands is represented by the petitioners. (*Hull* v. *Sangamon River Drainage District*, 219 Ill. 454.) An assessment for the betterment of lands is not a tax, (*Car-*

*lyle* v. *Bartels,* 315 Ill. 271,) but it is an incumbrance, the discharge of which must be apportioned ratably between the life tenant and the remainderman. (*Huston* v. *Tribbetts,* 171 Ill. 547; *Lantz* v. *Caraway,* 180 Ind. 484, 103 N. E. 335.) Since the assessment is against the property and not against the owners of the property, (*City of Chicago* v. *Marsh,* 251 Ill. 298,) it would be manifestly unfair to permit one of the owners to bind the property without giving the other owners an opportunity to exercise their judgment and discretion in the matter. A life tenancy is of uncertain duration, and in most cases the reversioner or remainderman would represent much the larger part of the benefits to be derived from a permanent improvement. This being true, the reversioner or the remainderman would be charged with the larger part of the burden of paying the assessments, and he ought to have the right to say whether he is willing to have the improvement made and the consequent costs made a lien on his interest in the property.

Since the lands are not represented until the petition has been signed by the person or persons owning them in fee, it is clear that the signature of the life tenant, alone, does not represent any portion of the acreage in which he holds a life estate. He has a limited interest in the entire tract, but he does not own in fee simple any part of the tract. For the purpose of determining whether the lands are represented, the acreage involved cannot be divided in accordance with the expectancy of the life tenant. For instance, if A has a life estate in sixty acres of land and B, C and D own the remainder in fee, the signature of A, alone, will not represent any of the acreage, but the signature of A and B will represent one-third of the acreage because their combined estates amount to an estate in fee in one-third of the lands. (*Hull* v. *Sangamon River Drainage District, supra.*) Under the example, the combinations A B, A C and A D each own an undivided one-third interest in the

land in fee and each combination can sign for twenty acres. *Merritt* v. *City of Kewanee, supra.*

Under no theory advanced by appellants can it be held that the land owners owning more than one-half in area of the lands in the district signed the petition to abolish the district, and it follows that the petition was properly dismissed.

The judgment of the county court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE STONE, dissenting:

I do not agree with the conclusion reached in the foregoing opinion. In the first place, it is by no means true that when applied to real estate the word "owner" at all times means an owner in fee simple. It is generally held that the term "land owner" has no fixed meaning in the law but must be construed in the light of the use and purpose to which it is put in an enactment. *Coombs* v. *People,* 198 Ill. 586; *Cheisa* v. *DesMoines,* 158 Iowa, 343; *Tompkins* v. *A. & K. R. R. Co.* 21 S. C. 420; 2 Pope's Legal Definitions, 1120.

While the term "owner of land," as used in the law of real property, has been held by this court to ordinarily mean the owner of an estate in fee simple, (*Bowen* v. *John,* 201 Ill. 292; *Coombs* v. *People, supra; Merritt* v. *City of Kewanee,* 175 Ill. 537; *Illinois Fire Ins. Co.* v. *Marseilles Manf. Co.* 1 Gilm. 236;) yet the law recognizes more than one definition of ownership, both in real and personal property. There may be an absolute ownership or a qualified ownership, and both are equally recognized. The highest estate in land known in the law is a fee simple estate. The owner of a life estate in land who is in possession and has dominion and control over the land has a higher estate than a reversioner, whose estate will ripen into enjoyment only in case of the failure of the contingency of an intermediate estate.

The word "owner" has been defined to include one who has the usufruct, control or occupation of land with claim of ownership, whether his interest be an absolute fee or a less estate. (*Arms* v. *Ayer*, 192 Ill. 601; *Coombs* v. *People, supra; Fort Dearborn Lodge* v. *Klein*, 115 Ill. 177; *Deere* v. *Chapman*, 25 id. 498.) In *People* v. *Barnes*, 193 Ill. 620, a tract of land was devised without disposing of the fee. An information in *quo warranto* was filed against the drainage district in which that land was situated. The replication averred as to this particular land that Regina Poggenpohl, widow of the testator, was not the owner but had a life estate, only. It was there held that "for the purposes of the organization of the district, Regina Poggenpohl [the widow] was the owner of the land." In *Huston* v. *Tribbetts*, 171 Ill. 547, it was held that both the life tenant and the vested remaindermen were liable for the assessments for a permanent improvement, and that the former, on payment of the same, could recover ratably from the latter.

Ownership of real estate, as that term is used in statutory enactments, has been held to include other than an estate in fee simple absolute, where such construction is shown to be in accordance with the intention of the legislature in the use of the term. Whenever the connection in which the term is used or the apparent purpose of the statute is such as to call for a broader construction it has been universally so construed. Statutes of this character should not receive a construction so strict as to defeat the intention of the legislature, but should, when possible, be so construed that the intent and purpose of the legislature shall be carried out.

There is nothing in the act which tends to lead to the conclusion that the legislature intended that "owners" of land should mean owners of the fee. Such a conclusion in a case of this kind, where the life estate is followed by contingent remainders with the reversion in the heirs-at-law of the testator, places in such reversioners, as holders of the

fee, the right to represent the lands in the district though the life tenant must pay the assessments for the improvements of the district without recourse against the holders of the reversion. Such a situation is not only repugnant to the intent and purpose of the Drainage law but to the fundamental principle of a right to representation in all matters of taxation. Not only is this true, but the conclusion of the opinion in this case, as I view it, is impracticable. Assume that A dies owning eighty acres of land in a drainage district. By his will he devises a life interest to B with a contingent remainder to C and with no limitation over. The fee in reversion in that case vests in his heirs-at-law. These may be so widely scattered as to be practically unascertainable, therefore making it practically impossible not only to secure their consent to a petition of this character but likewise impossible to determine how many owners constitute a majority of the land owners in the district, thereby depriving any petition of certainty that it has been signed by a majority of such land owners. Where the number of tracts so affected is large the dissolution of the district becomes impossible, not only because the majority of the land is not represented in the petition but because it can not be ascertained whether a majority of the land owners have signed it. If the opinion in this case is right in holding that a life tenant is not an owner of land for the purpose of voting such land, it is illogical to say that he is an owner of land who may be counted as such in determining whether a majority in number of the land owners have signed the petition. The statute does not make any such distinction, and there is none in logic, as I view it.

It seems to me illogical and unjust to hold that the life tenant, who must, without recourse, pay the assessments to protect his interest, has yet no voice in voting the lands assessed in a petition of this character.