## TRAPP v STEUBENVILLE BUILDING & LOAN ASSOCIATION CO. et

Common Pleas Court, Jefferson Co

No 32930. Decided March 11, 1941

Simon F. Carpino, and Hugo F. Chestosky, Steubenville, for plaintiff.

Chalfant & Chalfant, Steubenville, for defendant, The Steubenville Building & Loan Ass'n. Co.

### OPINION

By WEINMAN, J.

Plaintiff in his petition sets forth that at the time of his injury, the defendant, The Steubenville Building & Loan Association Company, was the owner of the legal title to real estate situated on Commercial street in the village of Mingo Junction, Ohio. Plaintiff further sets forth, that the defendant, Charles Oberman, with the consent and by permission of the defendant, The Steubenville Building & Loan Association Company, and under and by virtue of a written installment purchase plan contract, commonly known as a land contract, was in possession of said premises.

To this petition the defendant, The Steubenville Building & Loan Association Company, demurs, and for cause says that said petition does not state a cause of action against said defendant.

It is the contention of this defendant that it sold the real estate in question under a land contract and therefore can not now be regarded as the owner thereof with respect to a consideration of the provisions of §1006 GC, which is commonly known as the hand rail statute. This defendant further contends that there is no allegation in the petition to the effect that the defendant company retained any right of control or supervision of any kind over the property in question, and that only a person in possession and having the right to deal with the property could comply with the requirements of the statute providing for hand rails for all

stairs and stairways in the building.

It is the contention of the plaintiff herein that the defendant company being the owner of the legal title to said premises comes within the provisions of and must comply with §1006 GC.

It is admitted by the defendant company that there is no question that the building referred to in the petition falls within the properties covered by the statute.

The following question is therefore presented to the court for determination: Is a vendor of real estate under a land contract amenable for damages to a person who has been injured as a direct and proximate result of a violation of §1006 GC, commonly known as hand rail statute?

Sec. 1006 GC, provides:

"In tenement houses, apartments, manufactories, mills, shops, stores, churches, hotels, halls for public meetings, lecture rooms, restaurants, public library rooms, business offices of professional men and others doing business for or with the public, all public buildings and other rooms or places of public resort or use, whether for the transaction of business or social enjoyment, the owners, directors, trustees, lessees, managers, controllers or proprietors thereof shall provide and maintain for all stairs or stairways for ingress or egress, a substantial hand-rail extending from the top to the bottom thereof, and firmly fastened to the wall or other support or partition at the side of such stairs. Such hand-rail shall be constructed of wood not less than one and one-half inches wide and two and one-half inches thick or of iron not less than one and one-half inches in diameter."

**Sec. 1007 GC, provides:**

"Whoever owns or has in charge such stairs or strairways as directors, trustees, lessees, managers or proprietors and neglects or refuses to provide and maintain in good repair the handrail provided in the preceding section shall be fined not less than ten dollars nor more than one hundred dollars and be liable to any person injured because of the want of such rail and for any injury or damages to a person resulting from a defective rail."

In considering this question upon a demurrer we must determine the construction to be placed upon this statute and the interpretation of the word "owner" as used therein.

Defendant presents to the court what it claims as a case squarely in point, decided by the Supreme Court of Wisconsin, and based upon a similar hand rail statute. The syllabus in the case of Freimann v Cumming et, 185 Disc. 88, 200 N. W. 662, reads as follows:

"Under Wisconsin statutes to charge one as "owner" with liability for defective condition of building, there must exist in such person right to present possession, control or dominion. such that he may lawfully enter and perform duties fixed by that statute.

"One who under a land contract had neither right of present supervision, control, nor possession of a building, which he was contracting to convey to another, held not chargeable under Wisconsin statutes as "owner" for defects in such premises, notwithstanding he held legal title."

This court, upon further examination of this case, can not agree with the contention of this defendant that the Wisconsin hand rail statute is similar to the Ohio hand rail statute. Upon an examination of the statutes of Wisconsin we find that the word "owner", by the terms of said statute, has been restricted in its meaning so that it means "one having control thereof". The court in its opinion in said case says:

"The material part of the statute upon which plaintiff predicates her right to recover as against respondent is found in §101.01 (13), providing that the word "owner" shall mean and include every person "having ownership,

control or custody" of any public building.

"Considering the language and general purpose of this statute we now hold that, in order to place such a liability as is here claimed against one as the "owner" of such premises, there must exist in such person the right to present possession or present control or dominion thereover."

This court, therefore, can not follow the Wisconsin case as an authority for the determination of the question at bar because the language used in the statute of Ohio does not restrict the meaning of the word "owner" to the person exercising control or custody of any public building.

The fact that the defendant company was not in possession or exercised no control or right of supervision over said premises, is not a defense. The owners of premises are liable for the violation of the hand rail statute when said premises are in the sole control and possession of a lessee.

In the case of **Doster v Murr, 57 Oh Ap 157, 10 OO 298**, the syllabus reads:

"Sec. 1006 GC, which requires that hand rails be provided and maintained for stairways in buildings of certain classes, imposes upon the owners of such buildings a duty which can not be evaded by leasing the entire building to another."

An owner of property, by executing a lease whereby control and possession would be exclusively in the lessee, can not escape liability for the violation of §1006 GC. By analogy, therefore, it would be no greater hardship for an owner out of control and out of possession of premises because of a land contract to be amenable to the provisions of §1006 GC.

It is interesting to examine some of the Ohio cases that refer to the relationship which exists between a vendor and a vendee.

In the case of **Brush & Stanbury v Knisley et, 14 Ohio 21**, the syllabus reads:

"A vendor, not having parted with the legal title and the purchase money not having been paid, is possessed of **both the legal and equitable title to the land.**"

In this case part of the purchase money had been paid on the land contract and the principle of law herein stated has never been specifically reversed by any later cases in Ohio.

In the case of **Coggshall v The Marine Bank Co., 63 Oh St 88**, the syllabus reads:

"The interest of the vendee of land, before conveyance, is an equitable estate in the land, equal to the amount of the purchase money paid, and which, upon full payment, may ripen into a complete equity entitled him to a conveyance of the legal title according to the terms of the contract, and it is of these rights that notice is given to all the world by the possession of the vendee.

"The interest of the vendor is not that of a mere naked trustee for the vendee, but he holds not only the legal title, but a beneficial estate in the lands to the extent of unpaid purchase money."

On page 96 of this opinion we read:

"The misapprehension arises, as we think, in assuming that the vendor is a mere naked trustee. Such in reality is not his position. His legal title would, at common law, have been sufficient to maintain ejectment under the rule that in general, the legal title must prevail. And such is the law now in many of the states, and is the rule of the United States Supreme Courts. 10 Am. & Eng. Encyc. Law (2d ed.), 498; Burnett v Caldwell, 9 Wall., 290. Nor do we know of any rule in this state which would defeat ejectment by the vendor where the vendee is in default, at least where he has wholly defaulted. **Showers v Emery, 16 Ohio Rep. 294.** These considerations have an important bearing upon the character of the vendor's interest in the land, for it

would be a strange situation to find a party clothed with sufficient title to and interest in land to constitute the basis of an ejectment to recover its possession, and yet not sufficiently the owner to permit execution or attachment against the same land by his creditors. The rule undoubtedly is that, while, in a general sense, the vendor holds the legal title in trust, yet so long as any purchase money remains unpaid, he still retains a personal right and interest in the land, and can not be compelled to part with the title except upon full compliance by the purchaser with the terms of the contract.

"The attitude of the parties is well stated in **Jaeger v Hardy, 48 Oh St 335,** to the effect that a vendor's interest, before conveyance, 'is the legal title, and a beneficial estate in the lands to the extent of the unpaid purchase money', while that of the vendee is 'an equitable estate in the land equal to the amount of the purchase money paid by him, and which, upon full payment, may ripen into a complete equity entitling him to conveyance of the legal title according to the terms of the contract'.

"Record title being in the vendor, his creditors are justified in treating the land as his save only as to the rights of the vendee."

In the case of **Woloveck v Schueler, 23 O. L. R. 262,** the syllabus reads:

"A contract for the sale and purchase of real estate, where the vendee takes possession and is bound to pay therefor and the vendor is bound to convey on payment of the price, gives to the vendee an equitable estate in the land equal to the amount of the purchase money paid by him, which upon full payment may ripen into a complete equity entitling him to conveyance of the legal title according to the terms of the contract; but until such full payment and conveyance is made, **the vendor has the legal title and a bene-** ficial estate in the land to the extent of the unpaid purchase money."

This case is also reported in **19 Oh Ap 210,** and we quote from page **217** of said opinion:

"We regard it as settled in this state, as it is in many of the states of the Union, that a contract for the sale and purchase of real estate where the vendee takes possession, which contract binds the vendee to pay therefor and binds the vendor to convey on payment of the price, gives to the vendee an equitable estate in the land equal to the amount of the purchase money paid by him, and which, upon full payment, may ripen into a complete equity entitling him to conveyance of a legal title according to the terms of the contract, and that **until such full payment and conveyance are made the vendor has the legal title and the beneficial estate in the lands to the extent of the unpaid purchase money."** Jaeger v Hardy, **48 Oh St 335,** and **Coggshall v Marine Bank Co., 63 Oh St 88.**

Before completely determining the effect of the land contract upon the ownership of property it would be well to examine Thompson on Real Property, Volume 8, page 459, §4550.

"A sale of land is the actual transfer of the title from the grantor to the grantee by an appropriate instrument of conveyance. A 'sale' of property transfers ownership thereof which includes both title and the right of possession and is fundamentally different from a lease which grants only the use and enjoyment of the demised premises.

"An agreement to sell land is a contract to be performed in the future and if fulfilled it results in a sale. It is preliminary to a sale but is not a sale in itself. Breaches, recession or release may occur by reason of which the contemplated sale never takes place. A contract to sell land on the installment plan is an agreement to sell and not a sale."

It must be concluded, by an examination of the Ohio cases and the general principles set forth in the various text books, that a vendor of property holds more than a bare legal title.

In many cases equity regards the purchaser under a land contract as the owner of the land. The case at bar, however, is not an equity case. The construction of the statute is determinative of the case involved.

The hand rail statute, §1006 GC, provides that owners, etc., of all places of public resort, shall provide and maintain a hand rail.

Sec. 1007 GC, provides a penalty for failure to comply with §1006, and also that the owner or custodian of such stairs "shall * * * be liable to any person injured because of the want of such rail."

The word "owner" as defined in Bouvier's Law Dictionary, 1934, is as follows:

"He who has dominion of a thing, real or personal, corporeal or incorporeal, which he has a right to enjoy and do with as he pleases—even to spoil or destroy it as far as the law permits, unless he be prevented by some agreement or covenant which restrains his right."

We find the following definitions of the word "owner" reported in various cases:

"Word 'owner' is **nomen generalissimum,** and meaning thereof is to be gathered from connection in which it is used, and from subject-matter to which applied, and, when used in statute, nature and purpose of statute may indicate its meaning, and when applied to real estate, without any qualifying words, in common as well as legal parlance, it means owner in fee simple." Warren v Lower Salt Creek Drainage Dist. of Logan County, 147 N. E. 248, 249: 316 Ill. 345.

" 'Own' is a general term which varies in its significance according to its use. As applied to realty it usually denotes a fee-simple estate, but as titles to realty vary from that of absolute ownership to that of mere occupancy, it may also denote a less estate, such as a servitude or usufruct." Gibson v Zylks, 173 So. 757, 186 La. 1043.

"The word 'owner' has a definite meaning, and signifies one who has dominion over a thing, which he may use as he pleases, except as restricted by law or by agreement. The precise meaning, perhaps, depends upon the nature of the subject-matter, and the connection in which it is used; but, when applied to real estate without any qualifying words, in common as well as legal parlance, it prima facie means an owner in fee." Johnson v Crookshanks, 28 P. 78, 21 Or. 339, 340, citing And. Law Dict. tit. "Owner".

In order to determine the construction to be placed upon the word "owner" as used in this statute, this court believes that the meaning thereof is to be gathered from the connection in which it is used, from the subject-matter to which it is applied, and with respect to the nature and purpose of the statute involved. The statement of the purposes of this act (the hand rail statute) is set forth in **89 O. L. 375.**

"An act to give better protection to such persons as use and pass up and down stairs and stairways in or on tenement houses, apartments, manufactories, mills, shops, stores, churches, hotels, public halls, lecture rooms, restaurants, public library rooms, business offices of professional men, and others doing business for or with the public, of public building and other rooms of public resort, whether for the transaction of business or social enjoyment.

"Preamble—Accidents are daily occurrences and fatal injuries resulting from the want of proper protection to such person or persons as are named

in the foregoing title and statement of the purposes of this act."

The statement of the purposes of this act, together with the preamble indicate that the hand rail statute attempts to cover any person having any interest whatsoever or any rights with reference to possession, control or management of any property. It attempts to be broad in scope. It is definite in its statements that this statute was passed for the protection of the general public.

The statute does not restrict the meaning of the word "owner". The statute imposes a duty upon the owner and makes no provisions for the termination of that duty upon the leasing of the building, or upon the signing of a land contract, or upon delivering possession to a third party. As this statute places no such limitation, this court can only arrive at one conclusion, and that is, that there shall be no such limitation. With respect to a consideration of this statute in connection to which it is used, from the subject-matter to which it applies, and with respect to its nature and purpose, in the opinion of this court, §1006 GC, was intended to include the defendant herein within its meaning.

Counsel for defendant have cited the case of **Hemm v Williamson, 47 Oh St 493**, the syllabus reads:

"One who simply holds the legal title to a water-craft as security for the amount due him upon the sale of it, having neither the possession nor control of the craft, is not an 'owner' within the meaning of §§5880 and 5882 Revised Statutes; and is, therefore, not liable for supplies furnished it."

In this case the meaning of the word "owner" is held to apply to the person in possession or control of the watercraft . Under the intent of these statutes, which pertain to supplies furnished to the person in possession or control of a watercraft, the court has limited the meaning to be given to the word "owner". This case is not author-ity in the instant case because personalty and not real estate is involved. Supplies are furnished to the party in possession or control. When you consider the connection in which this statute is to be used, the subject-matter to which it applies and its nature and purpose, we find that they are not analogous to the hand rail statute. The intent of §§5880 and 5882, Revised Statutes, is different from the intent distinctly expressed with reference to the application of §1006 GC.

In the case at bar the petition sets forth that the defendant is the owner of the legal title of the property involved. This court believes that the hand rail statute is applicable to the defendant, The Steubenville Building & Loan Association Company, under the pleadings in this case, and that this defendant can not escape liability for the violation of §1006 GC, because of a vendor and vendee relationship. This defendant is the owner of said property within the purview of §1006 GC.

The demurrer of the defendant, The Steubenville Building & Loan Association Company, is overruled.