71 N.J. Super. 602 (1962)
177 A.2d 565
ARTHUR EFROS AND JULIE EFROS, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
MARY RUSSO AND JOSEPH RUSSO, HER HUSBAND, AND MAJO, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 1961.
Decided January 29, 1962.
*603 Before Judges PRICE, SULLIVAN and LEONARD.
Mr. Harold Kaplan argued the cause for appellants.
Mr. Owen B. Pearce argued the cause for respondents.
The opinion of the court was delivered by PRICE, S.J.A.D.
Plaintiffs sought a declaratory judgment in the Superior Court, Law Division, so construing a written lease between plaintiffs (lessees) and defendants (lessors) as to free plaintiffs from any obligation to pay a $4000 special assessment, levied against the leased premises *604 by the Township of Wall for a portion of the cost of a municipal water system, and to adjudge that defendants were obligated to make such payment. The trial court denied the relief sought by plaintiffs and granted defendants' cross-motion for summary judgment, which judgment was, in part, as follows:
"It is * * * adjudged and declared that under a true construction of the lease dated April 2, 1956, by and between the plaintiffs, Arthur Efros and Julie Efros, his wife, and the defendants, Mary Russo and Joseph Russo, her husband, and Majo, Inc., the plaintiffs are obligated to pay the special water assessment for benefits levied against the leased premises and presently a lien thereon together with all unpaid interest on said assessments and all future assessments levied against the leased premises, * * *."
The trial court's opinion, on which the aforesaid judgment was based, is reported in 68 N.J. Super. 110 (Law Div. 1961). The court's action was based on the pleadings and affidavits submitted by the parties.
There is no factual dispute. On April 2, 1956 plaintiffs leased from defendants an unimproved tract of land in the aforesaid township for an annual rent of $3000. The written lease, prepared by defendants' attorney, was for a period of 52 years, with an option by which plaintiffs might renew the lease for a further period of 23 years. The lease contained the following covenants:
"The said party of the second part [plaintiffs-lessees], in addition to the above rent, covenant to pay all taxes on the said premises during the term of this lease and any renewal or renewals thereof.

* * * * * * * *
And at the expiration of the said term, or the termination of this lease, the said Tenant will quit and surrender the premises hereby demised, in as good a state and condition as reasonable use and wear thereof will permit, damages by the elements excepted." (Emphasis supplied)
On April 26, 1956 plaintiffs leased the aforesaid property to Great Atlantic & Pacific Tea Company, Inc. (hereinafter A. & P.) for a term of ten years, with renewal options. *605 for three additional successive periods of five years each. The lease was to "commence on the first day of the month next succeeding the completion and acceptance" of a building and parking lot, which, by the terms of the lease-agreement, plaintiffs were obligated to erect for A. & P. Such building was erected at a cost "in excess of $150,000.00." The annual rental was $22,800. The lease-agreement contained the following provision:
"That the said lessor [plaintiffs] shall pay all taxes, assessments and other charges imposed upon the premises hereby demised."
By an "Agreed Statement in Lieu of Record" (R.R. 1:6-2) it appears that the aforesaid municipal water system was installed in 1959 and that such system had an estimated "period of usefulness" of "forty years."
In concluding that the defendants were entitled to prevail the trial court held in part as follows (68 N.J. Super., supra, at pp. 113, 116, 117-118):
"The majority of American cases assent to the rule that where the agreement is restricted to the word `taxes,' or modified terms to that effect, as `all taxes,' the lessee is not bound to pay for special assessments against the demised premises.

* * * * * * * *
An exception to the general rule exists where the lessee is virtually the owner of the premises and is the chief, if not the sole, beneficiary of the improvement.
The undisputed facts of the instant case bring it within the exception. The agreement is for so long a period of time (75 years) that it does not fall within the reason of the general rule. An agreement for so great a duration must be deemed to establish a permanent condition. The argument which applies in the case of an ordinary lease is here reversed.
The tenants are indeed the sole beneficiaries of the improvement. In fact, the term of letting far exceeds the period of usefulness of the improvement for which the special assessment was levied. This Court in all justice and fairness must lean toward a construction that will compel one who enjoys the benefit of the improvement for a practicably unlimited time to pay for the same.
It is unnatural and unfair that an expense of this character should fall upon one who derives no benefit and whose rental would be drastically decreased.

*606 * * * * * * * *
I find that an exception to the general rule exists; that the parties used the word `taxes' in its broad and general sense and intended to include special assessments; that to construe the term `taxes' so as not to include special assessments would undoubtedly give to the tenant an unfair, unreasonable advantage over the Landlord.
Accordingly, I construe the term `all taxes' to include not only the present assessment but all future ones as well, thus plaintiffs-tenants are obliged to pay the same."
Plaintiffs, challenging the aforesaid judgment, contend: (a) the provision in the primary lease that plaintiffs shall pay "all taxes" does not encompass an obligation to pay the "special assessment" here involved and the trial court erred in holding that plaintiffs were so bound; and (b) the trial court erred in holding as aforesaid (68 N.J. Super., supra, at p. 118), that the "plaintiffs-tenants are obliged to pay" not only "the present assessment but all future ones as well."
There is no doubt that it has generally been recognized, as stated by the trial court (68 N.J. Super., supra, at p. 113), that "a clear and manifest distinction" exists between the terms "taxes" and "assessments." It is equally clear that, absent special circumstances, the word "taxes" or the words "all taxes" would not include "special assessments." 63 A.L.R. 1391, 1392 (1929).
Special circumstances, however, exist in the case at bar. In determining the intent of the parties in their use of the words "all taxes" it is essential that consideration be given to all of the pertinent factors of which the lessors and lessees were aware at the time of the negotiation of the lease. These include the aforesaid long term of the primary lease, the option for a long-term renewal thereof, as well as the contemplated construction by plaintiffs of a building for a supermarket to be leased by plaintiffs to A. & P. Precisely that course was followed and, as above noted, the sublease was executed within less than a month of the date of the execution of the primary lease. It is against the background of these factors that we note the *607 40 years of estimated life of the water system, from the installation of which the assessment under scrutiny arises.
In resolving the issue presented on this appeal we find no pertinent legal principle to be drawn from the variety of allegedly comparable circumstances suggested by the litigants. Illustrative of these situations, which we find have no direct bearing on the disposition of the matter now before the court, are: (a) those cases which hold that in the absence of any clause in the lease as to the payment of taxes or assessments, and where no special circumstances appear, the landlord is to bear them (see cases cited in Annotation, "Rights and duties between landlord and tenant in respect of taxes or assessments in the absence of stipulation in lease in that regard." 73 A.L.R. 824, 825 (1931)); (b) allegedly similar situations existing between life tenants and remaindermen where the question of the apportionment of assessments has been at issue and ensuing litigation has been resolved on the basis of the respective benefits received (Huston v. Tribbetts, 171 Ill. 547, 49 N.E. 711, 712 (Sup. Ct. 1898)); and (c) cases where the decisions were based on specific qualifying words appearing in the lease (see cases cited in Annotation, "Special assessments as within provision of a lease requiring lessee to pay `taxes,' `taxes and assessments' and variations." 63 A.L.R. 1391, 1395-1396 (1929)).
With reference to the foregoing general rule we reemphasized that exceptions exist in those instances where special circumstances justify a departure therefrom with the result that a tenant and not a landlord must bear the burden of taxes and assessments. Deutsch v. Frey, 36 Ohio App. 226, 173 N.E. 40, 43 (Ct. App. 1930); Chicago Great Western Ry. Co. v. Kansas City Northwestern R. Co., 75 Kan. 167, 88 P. 1085 (Sup. Ct. 1907); 32 Am. Jur., Landlord and Tenant, § 295, at p. 275. See, Pettebone v. Smith, 150 Pa. 118, 24 A. 693, 695, 17 L.R.A. 423 (Sup. Ct. 1892).
*608 In the instant case the "attendant circumstances," to which we turn in our "quest" for the intention of the parties (Atlantic Northern Airlines, Inc., v. Schwimmer, 12 N.J. 293, 301-302 (1953)), are: (a) the length of the term of the primary lease; (b) the amount of the annual rent reserved thereunder; (c) the comparison of that sum with the amount of the special assessment, and (d) the parties' knowledge of the projected improvements, with the long-term sublease in prospect. Because thereof we are persuaded that the intent of the parties was that an "assessment" such as is here involved (one for an improvement, the life of which is estimated to expire ten years before the expiration of the initial term of the primary lease) was encompassed within the term "all taxes," and the burden thereof should fall upon plaintiffs. This is so even though in negotiating the primary lease the parties thereto did not specifically discuss the responsibility for the payment of a special assessment such as is here involved.
The judgment of the trial court, determining that the obligation to pay the special assessment aforesaid should rest on plaintiffs, is affirmed.
However, we are not in accord with the trial court's further conclusion that plaintiffs are obligated to pay "all future" assessments, which may arise during the term of the primary lease or renewal thereof. Such determination cannot be made without reference to the nature of each future assessment and to the time of its imposition.
The case is remanded for the entry of judgment in accordance with the views herein expressed. No costs.